FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2010 JUL 30  A 10: 24

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

ATTORNEYS LIABILITY PROTECTION          )
SOCIETY, INC., A Risk Retention Group,   )
               Plaintiff,          )
                               )
                               )
v.          )    Civil Action No.  1:10CV 847
                               )          LO4/IDD
                               )
FORREST WALPOLE, NORTHERN VIRGINIA )
REAL ESTATE, INC., LAUREN KIVLIGHAN,    )
KAREN MARTINS, MCENEARNEY                     )
ASSOCIATES, INC., DAVID GAVIN and            )
DONNA GAVIN,                                                    )
               Defendants          )

## COMPLAINT FOR DECLARATORY JUDGMENT

### Introduction

1.     In this action, Attorneys Liability Protection Society, Inc., a Risk

Retention Group ("ALPS"), seeks a declaratory judgment that a policy of lawyers'

professional liability insurance, which ALPS issued to defendant attorney Forrest

Walpole, provides no coverage for statutory sanctions awarded against Walpole and his

former clients in a matter presently pending in state court in Virginia. More specifically,

ALPS seeks a declaration that, based upon the clear and unambiguous language of the

subject insurance policy, ALPS has no obligation to continue to defend or indemnify

Walpole in the sanctions proceeding, including with respect to the apparent contention by

his former clients (a contention already rejected by the state court) that Walpole should

bear sole or primary responsibility for the sanctions. Finally, ALPS seeks a declaration

that under the clear language of the policy it is entitled to reimbursement of the expenses it has incurred in defending Walpole against a non-covered claim.

## The Parties

2.      Plaintiff ALPS is a Montana corporation and Risk Retention Group which provides professional liability insurance to lawyers and law firms. ALPS has its principal place of business in Missoula, Montana.

3.      Defendant Forrest Walpole is a natural person who, upon information and belief, is a licensed attorney in Virginia, practices law at 501 Slaters Lane, Suite 19, Alexandria, Virginia, and lives at the same address. Walpole formerly served as counsel for the plaintiffs in the underlying state court proceeding, entitled *Northern Virginia Real Estate, Inc. et al. v. Karen Martins, et al.*, Circuit Court of Fairfax County, Virginia, Civil Action No. 2007-8717 (hereinafter "the NVRE Lawsuit").

4.      Defendant Northern Virginia Real Estate, Inc. ("NVRE") is a corporation which, upon information and belief, is incorporated in Virginia, is engaged in the real estate brokerage business, and has a principal place of business at 1018 Shipman Lane, Suite 200, McLean, Virginia. NVRE is a plaintiff in the NVRE Lawsuit, and was formerly represented by Walpole in that case.

5.      Defendant Lauren Kivlighan is a natural person who, upon information and belief, is engaged in the real estate brokerage business, is the owner, president and principal broker of NVRE, and lives at 1018 Shipman Lane, Suite 200, McLean, Virginia. Kivlighan is a plaintiff in the NVRE Lawsuit, and was formerly represented by Walpole in that case. (Except where otherwise necessary, NVRE and Kivlighan are referred to jointly herein as "Kivlighan".)

6.     Defendant McEnearney Associates, Inc. ("McEnearney") is a corporation which, upon information and belief, is incorporated in Virginia, is engaged in the real estate brokerage business, and has a principal place of business at 109 South Pitt Street, Alexandria, Virginia.  McEnearney is a defendant in the NVRE Lawsuit.

7.     Defendant Karen Martins is a natural person who, upon information and belief, is engaged in the real estate brokerage business, is the owner of McEnearney, and lives at 6515 Sunny Hill Court, McLean, Virginia.  Martins is a defendant in the NVRE Lawsuit.  (Except where otherwise necessary, McEnearney and Martins are referred to jointly herein as "Martins".)

8.     Defendant David Gavin is a natural person who, upon information and belief, lives at 1441 North Longfellow Street, Arlington, Virginia.  David Gavin is a defendant in the NVRE Lawsuit.

9.     Defendant Donna Gavin is a natural person who, upon information and belief, lives at 1441 North Longfellow Street, Arlington, Virginia.  Donna Gavin is a defendant in the NVRE Lawsuit.

### Jurisdiction and Venue

10.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.  As detailed further below, an actual controversy exists between the parties with respect to the insurance-coverage matters that are the subject of this complaint.

11.     The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).  ALPS is a citizen of the State of Montana, while the defendants are all citizens of the Commonwealth of Virginia.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

12.     The Court has personal jurisdiction over each of the defendants because

they are all residents of, and/or have their principal place of business in, Virginia.

13.     Venue lies in this district pursuant to 28 U.S.C. § 1391(a) because the

defendants reside and have their places of business here, and the events on which this

action is based took place here.

### The Policy

14.     Walpole applied to ALPS for, and ALPS issued to Walpole, a policy of

lawyers' professional liability insurance, Policy No. ALPS11118-2, effective from July 1,

2007 to July 1, 2008 (hereinafter "the Policy").

15.     Under the terms of the Policy, ALPS agrees to pay, under certain

circumstances, sums that Walpole might become "legally obligated to pay as **damages**"

arising from professional liability claims made against him and reported to ALPS during

the policy period.

16.     The Policy further provides that ALPS "shall have the right and the duty

to defend" "any claim covered under this policy," and shall pay certain "claim expenses"

associated with the defense. However, the Policy makes clear that ALPS "shall not have

a duty to defend or to pay such expenses as to any claim not covered under this policy,

and shall have the right to seek reimbursement from any Insured, who shall promptly

provide such reimbursement, for any amount paid by the Company in defending any non-

covered claim."

17.     The term "damages" is, along with other terms written in bold-face type in

the Policy, given a specific definition therein. The Policy states: "**Damages** means any

monetary award by way of judgment or final arbitration, or any settlement, but does not

include: [1] punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations...."

18.     The coverage available under the Policy is subject to certain exclusions. In particular, the Policy states that it "does not apply to any claim arising from or in connection with... [a]ny dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error omission committed by, at the direction of, or with the consent of the Insured...."

### The NVRE Lawsuit and the Sanctions Proceeding

19.     The NVRE Lawsuit stems from a dispute over a real estate broker's commission. Kivlighan represented Donna Gavin in connection with the sale of a house. Gavin subsequently discharged Kivlighan and retained Martins, and Martins successfully sold the house, for approximately $700,000.

20.     Upon information and belief, the NVRE Lawsuit was filed by Walpole, on behalf of his clients Kivilighan and NVRE, in July 2007. The complaint named as defendants Donna Gavin and her husband, David Gavin, along with Martins and her brokerage company, McEnearney. The complaint asserted claims for conspiracy to harm in business, interference with contract expectancy, and defamation. Kivlighan at one point indicated that she sought compensatory and punitive damages from the defendants of over $3.5 million.

21.     When the matter came to trial, at the close of Kivlighan's case, the defendants moved to strike the evidence. While that motion was pending, Kivlighan took a "voluntary nonsuit" under Virginia procedural rules.

22.    On May 5, 2008, Walpole reported by letter to ALPS that the defendants in the NVRE Lawsuit intended to seek sanctions against him pursuant to Virginia Code § 8.01-271.1, which authorizes a court to impose "an appropriate sanction" against a party or attorney who files papers that are not well grounded in fact or law, and/or that are filed for an improper purpose.

23.    By letter of May 7, 2008, ALPS notified Walpole that given the terms of the Policy, including in particular the requirement that a covered claim be one for "damages," and the definition of that term as specifically excluding "sanctions," ALPS was reserving its rights as to whether Walpole was entitled to coverage for the anticipated motions, though ALPS nonetheless would appoint counsel to defend him in the matter, which ALPS did.

24.    Motions for sanctions were indeed filed by Martins and the Gavins in July 2008. They sought sanctions against Kivlighan and/or Walpole. The court held a hearing on the motions in August 2008, and issued an initial decision on March 17, 2009.

25.    The court's findings in the March 2009 decision included the following:

"The only claim Kivlighan ever advanced that was reasonably well grounded in fact[] is a $37,500 contract claim. Instead of limiting the action to that claim[,] Kivlighan and her counsel chose to advance at least three wildly speculative claims that lacked any basis in fact. These three claims dramatically increased the cost and duration of the litigation....

"Standing alone, the Court might conclude that any of these claims were merely a mistake or an oversight by counsel, and might warrant only a mild sanction. However, the combination of so many frivolous claims, supported by such wild speculation, so virulently prosecuted even after any legitimate prospect of success had vanished, convinces the Court that the claims were not an oversight or mistake. The Court is of the firm conviction that they were filed out of a vindictive and malevolent desire to injure and intimidate a business competitor."

26.     The court concluded that the defendants were entitled to sanctions, and

scheduled a further hearing to determine the appropriate amount to be awarded, including

establishing whether the attorneys' fees and expenses claimed by the defendants were

reasonable, and were causally related to plaintiffs' violations of § 8.01-271.1.

27.     After reviewing the March 2009 decision, ALPS again informed Walpole

by letter of the unavailability of coverage for sanctions under the Policy, and reiterated

that while ALPS had provided him with a defense, and would continue to do so until the

amount of the sanctions was determined, the company continued to reserve its rights on

the matter of coverage.  In addition to the Policy's definition of "damages," ALPS

explained, the court's March 2009 decision made clear that in its view both Kivlighan

and Walpole had engaged in conduct that fell within the Policy's exclusion for claims

arising from a "dishonest, fraudulent, criminal, malicious, or intentionally wrongful or

harmful act, error omission committed by, at the direction of, or with the consent of the

Insured...."

28.     The court held a further hearing on the sanctions matter on October 13,

2009, at which Kivlighan and others testified.  The court issued a further decision on June

29, 2010.  It rejected an argument by Kivlighan that she should not be liable for sanctions

because she acted on the advice of Walpole, her counsel:

> "Ms. Kivlighan argues that she was innocently following the advice of Mr.
> Walpole throughout the prosecution of the Underlying Action.
>
> "The Court finds that the record does not conform with [Kivlighan's]
> theory of the case.  Instead, there is substantial evidence of sanctionable
> behavior on the part of both the litigants and the lawyer.  The evidence has
> established that Ms. Kivlighan went to another lawyer, who advised her of
> a reasonable remedy that she may have had in this matter, a breach of
> contract action.  That was simply not enough for [Kivlighan], and [she]

continued to shop [her] case. Mr. Walpole offered [Kivlighan] a grab bag of remedies. He then filed suit on behalf of [Kivlighan] based upon these remedies, with a lack of basis in law or fact.

"Ms. Kivlighan was not a passive participant in this process. On the contrary, her actions showed a clear intent to support these claims, which were speculative at best....

"Moreover, her actions throughout the litigation are indicative of and establish the improper purpose with which she filed this lawsuit. She was nonresponsive to counsel's questions both at her deposition and when she took the witness stand throughout the litigation. During her deposition, when she did choose to answer questions, she was often evasive, disingenuous, and misleading.

"Ms. Kivlighan's behavior during her testimony at the aborted trial was equally elusive. Instead of answering the questions posed to her by counsel, she constantly engaged in diatribes which were non-responsive and irrelevant. It is clear from her behavior on the witness stand that she possesses a vendetta against Defendants. Indeed, this behavior, taken with her other actions, convinces the Court that she filed this lawsuit out of a vindictive and malevolent desire to injure each of the Defendants and to intimidate a business competitor. Moreover, her behavior is indicative of the lack of a factual basis for bringing the [NVRE Lawsuit]."

29.   After considering issues relating to the amount of the proposed sanctions,

the court concluded:

"The Plaintiffs [Kivlighan and NVRE] and Mr. Walpole violated the Statute when they filed the [NVRE Lawsuit] for an improper purpose and without a proper basis in law and in fact. As a result of this finding, the Court is required to impose sanctions on both Plaintiffs and Mr. Walpole. The Court finds that the proper sanction in this case is an award of reasonable attorney's fees and costs to the Defendants [totaling $272,094.46].... These sanctions are joint and several against Plaintiffs and Mr. Walpole and must be paid within 90 days."

## Claim for Declaratory Relief

30.   For the reasons given above, the motions for sanctions in the NVRE

Lawsuit are not claims for "damages," and the order of June 29, 2010 does not award

"damages," within the meaning of the Policy.

31.     For the reasons given above, the motions for sanctions in the NVRE

Lawsuit, and the award of June 29, 2010, arise "from or in connection with" a "dishonest,

fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error omission

committed by, at the direction of, or with the consent of the Insured" within the meaning

of the Policy.

32.     Accordingly, Walpole is not entitled to coverage under the Policy with

respect to the motions for sanctions, the June 29 award, or any further effort that may be

made, notwithstanding the state court's findings, to shift the sole or primary burden of the

sanctions to Walpole.

33.     Because there is no coverage for these claims, ALPS has no further

obligation to defend or indemnify Walpole in connection with the NVRE Lawsuit or any

proceedings related to the sanctions.  In addition, ALPS is entitled to reimbursement from

Walpole for all amounts paid by the company in defending him to date.


## Relief Sought

WHEREFORE, ALPS respectfully prays that this Honorable Court:

A.     Declare that Walpole is not entitled to coverage under the Policy with
respect to the motions for sanctions, the June 29 award, or any further
claim that may be made, notwithstanding the state court's findings,
seeking to shift the sole or primary burden of the sanctions to Walpole;

B.     Declare that ALPS has no further obligation to defend or indemnify
Walpole in connection with the NVRE Lawsuit or any proceedings related
to the sanctions;

C.     Declare that ALPS is entitled to reimbursement from Walpole for all
amounts paid by the company in defending him to date; and

D.     Award such further relief as the Court deems just.

July*30*, 2010

ATTORNEYS LIABILITY PROTECTION SOCIETY,
INC., A RISK RETENTION GROUP
By Its Attorneys,


John E. McIntosh Jr. VSB #20658
Law Offices of John E. McIntosh Jr.
4118 Leonard Drive, Fairfax, Virginia 22030
Phone (703) 352-7745
Fax (703) 352-7747
e-mail jemcintosh@earthlink.net

Regina A. Roman (roman@srbc.com)
William L. Boesch (boesch@srbc.com)
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street
Boston, MA 02114
617-227-3030

427031